*271 ORDER DENYING PETITON FOR REVIEW
A timely Petition for Review having been filed on September 23, 2002, by Laura Christoffersen, Esq. on behalf of Chris J. Windchief, biological son of Emily S. Day, from an Order issued from the bench on September 12, 2002, finding Ms. Day incapacitated and appointing David Horn guardian of Emily’s person and estate, the Honorable Bryce C. Wildcat, presiding. The Petition is denied for the reasons set forth below.
Petitioner alleges various grounds upon which this Court should grant review: 1) That he appeared at the hearing pro se and that his rights as a pro se litigant were not adequately protected; 2) That as the only lawful heir of the ward, he has a “prior right to appointment as the guardian ... ” and that the evidence presented does not support an award of guardianship to a non-family member; 3) That “his request for a continuance in the face of the late appearance of David Born ... was improperly ignored and/or denied ... 4) That “he was given inadequate time to respond to the appearance of David Born ... whose notice was not received ... until two days prior to the hearing.”; 5) That he was not given adequate time to respond to the motion to allow critical witnesses to appear by telephone nor notice of the testimony of Gerard M. Schus-ter; 6) That he did not receive a copy of the motion and order granting critical witnesses the right to appear by telephone until the day of the hearing; 7) That the testimony does not support a finding that Emily S. Day is incompetent and unable to handle her own affairs necessitating the appointment of a guardian.
Pro se litigant’s rights not adequately protected? Petitioner offers no authority for this proposition. Apparently he believes that pro se litigants have greater or special rights apart from those of a litigant who is represented. All litigants before the Fort Peck Tribal Courts enjoy the same rights; there are no special rights for pro se litigants. Nonetheless, as a practical matter, our Tribal Court does make every attempt to ensure that pro se litigants understand the process. Throughout the hearing Judge Wildcat closely monitored Mr. Windchief. (“... Okay. Mr. Windchief, at this time, do you have any witnesses that you wish to bring forth today?”) See Court Transcript, page 15, line 20 through page 16, line 1. Each time evidence was about to be introduced by Mr. Born, Judge Wildcat asked Mr. Windchief whether he had any objections. (“Okay. At this time Mr. Windchief, do you have any objections to bringing forward the Exhibit number ‘A’, which is the Durable Power of Attorney? Do you have any objections to this?”) Transcript, page 35, line 5 through 7. After reviewing the court transcript, there is no doubt that Judge Wildcat was very careful to ensure that Mr. Windchief understood the proceedings and further, to ensure that Mr. Windchief was afforded all of his rights;
Only legal heir has a “prior right” and that the evidence presented *272 does not support the appointment of a non-family member. Again, petitioner offers no legal authority to support his contention. Nonetheless, Title XII CCOJ S 203 controls. § 203(b) provides in part: “... In appointing guardians the Court shall give preference to relatives of the individual for whom a guardian is to be appointed, except that the Court shall not be bound by such preference if it finds that such relatives would not act in the best interests of the ward.” (emphasis added) The evidence before the Court indicated that David Horn, a close friend of Emily and her late husband, had been adopted “in the Indian way” in 1986; that he had been previously entrusted to take care of Emily’s late husband’s affairs; that he had been appointed Emily’s attorney-in-fact for both her estate and health care pursuant to two (2) separate Durable Powers of Attorney earlier in 2002; that Emily, in early 2002, had placed David Born on her checking and savings accounts while she was still competent to do so, and that he was not an heir of the estate and would therefore not have the same conflict of interest as Mr. Windchief, who was only one of Emily’s heirs. § 203(b) does not bind the Tribal Court to show preference to a ward’s relatives “if it finds that such relatives would not act in the best interests of the ward.” Taking into account all of the evidence before it, not the least of which was Emily’s express wishes as to whom she wanted to act as her Guardian, the Court concluded that David Bom was the person who would act in her “best interests”. All of the evidence introduced at the hearing strongly supports this conclusion.
Mr. Windchiefs request for continuance. Contrary to petitioner’s allegation that his request for continuance was “ignored and/or improperly denied”, no such request was ever made. Immediately after introducing the case to be heard for the record, the Court stated: Mr Windchief, you are basically the Petitioner in this matter. And that basically that you would proceed first regarding this petition that you have filed for guardianship of Emily S. Day. So, at this time, are you ready to proceed?” To which Mr. Wind-chief replied: “Sure”. See Transcript, page 1, line 15 through 20.
Improper time to respond to Mr. Born’s late appearance. As shown immediately above, Mr. Windchief did not request a continuance in view of the alleged short notice and his failure to object operates as a waiver. Failure to make a timely objection in the Tribal Court precludes Mr. Windchief from raising the issue on appeal.
Not given proper time to respond to the Motion to allow witnesses to appear telephonically. Judge Wildcat addressed the issue of the short notice:
Judge Wildcat: Okay. We do have a motion to allow testimony by telephone regarding Doctor Z(ilkowski) and Jerry Schuster. And this was dated “9-11-02”..so, you may not have received it as yet ... So, possibly, you may not have got that but ... would you have any objections as to having testimony of Doctor Z(ilkowski) and Jerry Schuster?
Mr. Windchief: Yeah! I haven’t ... I wasn’t notified. I mean, I haven’t checked mail yet....
Judge Wildcat: Okay. So, basically you state that you would object to having these people testify?
Mr. Windchief: If I had known. I don’t know what they’re testifying about. Does it say why they’re testifying? See Transcript, page 16, line 14 through page 17, line 10.
Judge Wildcat then informs Mr. Windchief regarding the stated purpose of Dr. Zil- *273 kowski’s and Mr. Schuster’s testimony and as to the need for their appearance tele-phonieally, at which point the following took place:
Judge Wildcat: ... So, this is what they would both be testifying to.
Mr. Windchief: That’s what they’re both saying? Sure.
Judge Wildcat: So, that would be okay? Mr. Windchief: Sure. See Transcript, page 18, lines 10 through 14.
Once again Mr. Windchief had the opportunity to object, however, he failed to do so. Such objection cannot be taken in the first instance in this Court.
Failure to receive the notice of the Motion to Allow Witnesses to Appear Telephonically. This issue is essentially the same as the one immediately preceding. The fact that Mr. Windchief may not have received the Motion was discussed in open Court. A timely objection was not made; indeed, after learning the substance of Dr. Zilkowski’s and Mr. Schuster’s testimony, Mr. Windchief agreed to proceed. Therefore, any objection as to not being timely served was waived.
Testimony does not support a finding that Emily is incompetent and in need of a guardian. This is a curious issue for Mr. Windchief to argue. The Court acted upon his petition alleging that Emily was indeed incapacitated and in need of a guardian. In fact, Mr. Wind-chief testified that his mother was, in his opinion, incapacitated. Regardless, it was the testimony of Dr. Zilkowski alone which supported the Court’s finding. Dr. Zil-kowski testified that he was Emily’s treating physician and that she had been suffering from Alzheimer’s disease. He further testified that Emily’s condition had been progressing slowly for the past two years and that within the past two months her condition had begun to progress “fairly rapidly”. He also testified as to his opinion of Emily’s ability to manage her affairs:
Mr. Toavs: Is it your opinion that Emily by reason of her Alzheimer disease lacks the capacity to manage her person and property effectively at this time?
Dr. Zilkowski: Yes, I do. I agree with that. See transcript, page 28, lines 8 through 11.
Contrary to Mr. Windchiefs assertion, ample evidence existed for the Court’s finding that Emily was incapacitated and in need of a guardian.
IT IS NOW THEREFOR THE ORDER OF THIS COURT:
The Petition for Review is denied and all Tribal Court orders heretofore stayed or not acted upon because of, or pursuant to, the pendency of this Petition, are herewith restored and shall be given full force and effect without further delay.